UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

KIMPEZ MILCENT,

    Plaintiff,

v.

                                      CASE NO.:

SEVENTH AVENUE, INC.,

    Defendant.
_____/

**COMPLAINT**

1. Unwanted "Robocalls" are the #1 consumer complaint in America today.

2. The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 2016 and in 2017 it was 4,501,967.[1]

3. Seventh Avenue, Inc., robocalled Plaintiff approximately 100 times.

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

5. Plaintiff, Kimpez Milcent, alleges Defendant, Seventh Avenue, Inc., robocalled him approximately 100 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*.

6. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7. The TCPA was enacted to prevent companies like Seventh Avenue, Inc., from invading American citizens' privacy and prevent illegal robocalls.

8. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. §227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that

wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

10. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

11. Violations described in the Complaint occurred while Plaintiff was in Lake Worth, Florida.

## FACTUAL ALLEGATIONS

12. Plaintiff is a natural person and citizen of the State of Florida, residing in Lake Worth, Florida.

13. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

14. Defendant is a Foreign Profit Corporation with its principal place of business in Monroe, Wisconsin, and conducts business in the State of Florida.

15. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (561) 294-1527.

16. Plaintiff was the "called party" during each phone call subject to this lawsuit.

17. Defendant did not have the "express consent" of Plaintiff to call his cell phone.

18. "Express consent" is narrowly construed by the Courts.

19. It is Defendant's burden to prove they had "express consent" per the TCPA to call Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

20. Defendant was put on notice Plaintiff did not want Defendant contacting him.

21. Defendant was told repeatedly to stop calling.[2]

22. Defendant did not have the express consent of Plaintiff to call him on the accounts they called him on.

23. Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

24. Defendant attempted to collect a debt from Plaintiff by this campaign of telephone calls.

25. Defendant made at least one call to (561) 294-1527.

26. Defendant made at least one call to (561) 294-1527 using an ATDS.

27. Defendant made at least ten (10) calls to (561) 294-1527.

28. Defendant made at least ten (10) calls to (561) 294-1527 using an ATDS.

29. Defendant made at least one hundred (100) calls to (561) 294-1527.

30. Defendant made at least one hundred (100) calls to (561) 294-1527 using an ATDS.

31. Each call Defendant made to (561) 294-1527 in the last four years was made using an ATDS.

32. Each call Defendant made to Plaintiff's cell phone was done so without the "express permission" of Plaintiff.

33. Each call Defendant made to Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a

---

[2] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what was said to the Defendant.

random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

34. The calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. §227(b)(1)(A).

35. Plaintiff repeatedly requested Defendant to stop calling his cell phone, however, Defendant continued to make calls.

36. Plaintiff's conversations with Defendant putting them on notice that he did not want more phone calls were ignored.

37. Defendant has recorded at least one conversation with Plaintiff.

38. Defendant has made approximately one hundred (100) calls to Plaintiff's aforementioned cellular telephone number since in or about April of 2017 which will be established exactly once Defendant turns over its dialer records.

39. Despite actual knowledge of their wrongdoing, Defendant continued the campaign of abusive robocalls.

40. By effectuating these unlawful phone calls, Defendant has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

41. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

42. Defendant's phone calls harmed Plaintiff by wasting his time.

43. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiff by depleting the

battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

44. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

45. Defendant never had Plaintiff's express consent for placement of telephone calls to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

46. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

47. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
**(Violation of the TCPA)**

48. Plaintiff incorporates Paragraphs one (1) through forty-seven (47).

49. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

50. Defendant knowingly violated the TCPA with respect to Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

51. Defendant, Seventh Avenue, Inc., repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or

prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C §227(b)(1)(A)(iii).

52. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under §227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

53. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Seventh Avenue, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

*s/ Geoffrey E. Parmer*
Geoffrey E. Parmer, Esquire
Florida Bar No. 989258
William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile:  (813) 435-2369
Geoff@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorneys for Plaintiff*